DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |
|---|---|
| UNITED STATES OF AMERICA and PEOPLE OF THE VIRGIN ISLANDS,  )<br>)<br>)<br>)<br>v.                                                                  )<br>)<br>VONNE BAILEY,                                           )<br>)<br>             **Defendant.**                             )<br>                                                                ) | Criminal Action No. 2014-54 |

**Attorneys:**
**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
   *For the United States and the Virgin Islands*

**Omodare B. Jupiter, Esq.,**
St. Croix, U.S.V.I.
   *For the Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER is before the Court on Defendant Vonne Bailey's Motion to Suppress (Dkt. No. 5; 14-cr-0046, Dkt. No. 28). The Government opposes Defendant's Motion (14-cr-0046, Dkt. No. 34).[1] For the following reasons, the Court will grant in part and deny in part Defendant's Motion—granting the Motion as to Defendant's statement claiming ownership of a package containing firearms, and denying the Motion as to the consent-to-search form signed by Defendant and the physical evidence seized from the residence.

---

[1] The Motion to Suppress and the Opposition were filed in case number 14-cr-0046, which was initiated by Information. Upon motion of the Government, that case was dismissed following the filing of an Indictment, which initiated the instant matter—case number 14-cr-0054. Unless otherwise indicated, citations are to 14-cr-0054.

### I. BACKGROUND AND EVIDENCE

Defendant Vonne Bailey was indicted on October 23, 2014 on the following charges: Possession of Marijuana with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D); Unlawful Mailing of a Firearm, in violation of 18 U.S.C. §§ 2, 1715; Attempted Unauthorized Possession of a Firearm, in violation of 14 V.I.C. §§ 331, 2253(a); Unauthorized Possession of a Firearm Seized From a Residence, in violation of 14 V.I.C. § 2253(a); and Possession of a Firearm with Obliterated Serial Number Seized From a Residence, in violation of 23 V.I.C. § 481(b). (Dkt. No. 1). In the instant Motion, Bailey seeks, pursuant to the Fourth and Fifth Amendments to the United States Constitution, to suppress a statement made by Bailey; a consent-to-search form signed by Bailey; and all physical evidence seized from 590 Mount Pleasant. (Dkt. No. 5; 14-cr-0046, Dkt. No. 28).

At the evidentiary hearing, Homeland Security Investigations ("HSI") Agents Yusuf Adeen and Brian O'Quinn testified. The following facts emerge from the record established at the hearing.[2]

On May 26, 2014, Customs and Border Protections officers alerted HSI agents that they had intercepted a package addressed to "Andrew Bailey" which contained one pistol and one partial assault rifle. In coordination with the Postal Inspector, HSI agents planned to execute a controlled delivery of the package, and replaced the firearms with innocuous materials.

---

[2] The Court bases the background factual discussion in this section on the record established at the suppression hearing. The Court provides this information solely for the purposes of this pretrial motion, ever mindful that Defendant Bailey is presumed innocent until proven guilty. Most of the facts discussed herein are alleged, but at this stage not conceded or proven beyond a reasonable doubt to the factfinder.

Stacey Bailey, Defendant Bailey's sister, collected the package on May 28, 2014. Several HSI agents intercepted her and drove her to a nearby office for an interview. She told the agents that Defendant Bailey had asked her to pick up the package. Stacey Bailey then consented to deliver the package to her brother at a residence located at 590 Mount Pleasant in Frederiksted, Virgin Islands. At the agents' request, she also called Defendant Bailey and confirmed on speakerphone that the package he was expecting was addressed to "Andrew Bailey."

Approximately five to six unmarked cars of law enforcement officers followed Stacey Bailey to 590 Mount Pleasant, where she went inside a house with the package. At least two agents proceeded to the back of the house to ensure no one exited through the rear of the property, while several other agents set up a perimeter in the front yard.[3] Agent Adeen and Agent O'Quinn approached the front door with their firearms held in the "low ready" position, meaning with weapons drawn but pointing to the ground. Agent Adeen testified that the weapons were drawn for the agents' safety because this was a "high risk situation."

Through the house's open front door, the agents observed a man standing in the living room.[4] Agent Adeen asked if he was Vonne Bailey and the man said yes. When Agent Adeen stated "come out, we need to talk to you," Bailey exited the house onto the porch. The agents then handcuffed Bailey, patted him down, and sat him in a chair. Bailey asked the agents why they had come. The agents responded that their visit was regarding the package, and Bailey claimed ownership of it. The agents placed Bailey under arrest and advised him of his *Miranda* rights.

---

[3] Agent Adeen testified that it was possible that someone inside the residence could see the agents outside.

[4] Neither agent personally observed or otherwise knew whether the front door was already open before Stacey Bailey approached the home, whether she left open the front door, or whether Bailey or another inhabitant of the house opened the door.

Agent O'Quinn then asked for consent to search the house. Bailey granted verbal consent to search only his bedroom, and gave the agents directions to that room. Bailey also signed a consent-to-search form (Gov. Exh. 1). En route to Bailey's room, the agents observed that a black backpack in the kitchen had a protruding firearm and that a nearby container appeared to hold marijuana.[5] Bailey confirmed ownership of both items and granted verbal consent to search them. Agent Adeen added both to the consent-to-search form. From Bailey's bedroom, agents seized marijuana and ammunition, and from the kitchen, the agents seized the firearm from the backpack and the nearby container with marijuana.

## II.   DISCUSSION

### A.   Defendant Bailey's Warrantless Arrest

Bailey argues that agents coerced him out of his house and, therefore, his warrantless arrest on the porch should be constructively deemed to be a warrantless arrest inside his home, in violation of his Fourth Amendment rights. The Court agrees.

#### 1.   Applicable Legal Standards

Warrantless seizures within a home are presumptively unreasonable, and therefore violate the Fourth Amendment, unless one of the defined exceptions to the warrant requirement applies. *See, e.g.*, *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011); *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010). "[T]he Fourth Amendment has drawn a firm line at the entrance to a house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590 (1980). Thus, probable cause is necessary, but not sufficient, to justify a warrantless seizure inside a home. *See id.* at 576 (holding that the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a

---

[5] Agent Adeen testified that a person had to walk past the kitchen to reach Bailey's bedroom from the front door.

suspect's home in order to make a routine felony arrest"). In contrast, a warrantless arrest in a public place, justified only by probable cause, is reasonable. *See United States v. Watson*, 423 U.S. 411, 423-24 (1976); *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992).

When an individual voluntarily exposes himself to government agents on the threshold of his house, he is in a "public place" for Fourth Amendment purposes, and is therefore subject to a warrantless arrest. *See, e.g.*, *United States v. Santana*, 427 U.S. 38, 40-42 (1976) (holding that defendant who was standing where "one step forward would have put her outside, one step backward would have put her in the vestibule of her residence," was subject to arrest without a warrant because she "was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house"); *Government of the Virgin Islands v. Clarke*, 572 F. App'x 138, 141-42 (3d Cir. 2014) ("It is settled law that a defendant standing on the threshold of his dwelling is in a 'public' place for Fourth Amendment purposes.").

However, if police force a person out of his house to formally arrest him, the arrest is deemed to have taken place inside the home and requires a warrant. *See Sharrar v. Felsing*, 128 F.3d 810, 820 (3d Cir. 1997) ("[W]hen a SWAT team surrounds a residence with machine guns pointed at the windows and the persons inside are ordered to leave the house backwards with their hands raised, an arrest has undoubtedly occurred. . . . We hold that under these circumstances the arrest occurred inside [the defendant's] home.") (abrogated on other grounds); *United States v. Al-Azzawy*, 784 F.2d 890, 893 (9th Cir. 1985), *cert. denied*, 476 U.S. 1144 (1986) ("[T]he important consideration in this type of case is the location of the arrested person, and not the arresting agent, [which] determines whether an arrest occurs within a home.") (internal quotation and citation omitted). A court must assess, based on the police's "show of physical force and assertion of authority," whether a "reasonable person would have believed

that he was free to remain in the house." *Sharrar*, 128 F.3d at 820; *see United States v. Kim*, 27 F.3d 947, 951 (3d Cir. 1994) (a seizure occurs when "a reasonable person would [not] feel free to 'disregard the police and go about his business,' or ultimately [when] 'a reasonable person would [not] feel free to decline the officers' requests'") (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

### 2. The Arrest

The Court notes that this is not a case in which an individual knowingly opened the door to his home to government agents in response to knocking and then was ordered out. *See United States v. Vaneaton*, 49 F.3d 1423, 1427 (9th Cir. 1995) (holding that police did not violate the Fourth Amendment when they made a warrantless arrest of a suspect standing inside the doorway of his hotel room when he—having seen the officers through a window—freely opened the door in response to a knock). Nor was Bailey already standing in his doorway taking stock of the agents when they arrived. *See Clarke*, 572 F. App'x at 139, 141-42 (holding that police officers properly ordered defendant out of his home for a warrantless arrest because, when officers were gathering in the front yard, he was "peeping out" at them from behind a partially open door). Although the front door of the Bailey residence was open, Stacey Bailey approached the door and entered the house ahead of the agents; the agents could not state how the door became opened; and Defendant Bailey was inside his home when agents approached the residence. Thus, the Court cannot conclude that Defendant Bailey either voluntarily exposed himself to the agents or was located at the threshold of his house so as to be considered in a public place for Fourth Amendment purposes.

Further, as Agent Adeen and Agent O'Quinn approached the front door and told Bailey to "come out [because] we need to speak to you," they had their weapons drawn because they

considered this a "high risk situation." The Court does not question the agents' decision to approach the residence with weapons drawn for safety reasons, and recognizes that the weapons were in the "low ready" position. Nonetheless, the Court finds that, under the circumstances here, when the two agents approached the residence with guns drawn and ordered Bailey out of the house, they displayed a show of authority and threat of force such that a reasonable person would not have believed he was free to remain in the house.[6] Thus, Bailey was constructively arrested inside his home.[7]

In view of the foregoing, the Court concludes that Bailey's warrantless arrest violated the Fourth Amendment.[8]

---

[6] The Court also notes that at least six agents entered Bailey's property, with two agents positioning themselves at the rear of Bailey's house and several remaining in his front yard. Agent Adeen testified that it was possible for someone inside the house to see the agents outside in the yard. Thus, the Court finds the surrounding presence of the agents also weighs in favor of finding coercive circumstances. *Cf. Sharrar*, 128 F.3d at 820.

[7] The Court agrees with the Government that the agents had probable cause to believe that Bailey had participated in the illegal mailing of a firearm. (*See* Dkt. No. 34 at 3-4). However, there is no evidence of exigent circumstances to justify a warrantless entry into Bailey's home. *See United States v. Mallory*, 765 F.3d 373, 382 (3d Cir. 2014) ("The Government bears the burden of demonstrating that exigent circumstances justified a warrantless [entry into a home], and that burden is heavy."). As discussed above, this Court has found that Bailey was subject to a constructive in-home arrest. Thus, the existence of probable cause alone is insufficient to support the agents' warrantless entry. *Id.* ("As *Payton* makes plain, police officers need either a warrant or probable cause *plus* exigent circumstances in order to make a lawful entry into a home.") (quoting *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (emphasis added)).

[8] Admittedly, this case presents a closer question than when the evidence regarding a defendant's voluntary disclosure to public view is clearer, or when the measures employed by law enforcement to order an individual from inside his home are more coercive. *See United States v. Maez*, 872 F.2d 1444, 1450 (10th Cir. 1989) ("Given the presence of some ten officers, the drawn weapons of the SWAT team surrounding [defendant's] trailer, the use of the loudspeakers, and the frightening circumstances his family faced, a reasonable person would have believed he had to come out of the home."); *Al-Azzawy*, 784 F.2d at 893 (finding any reasonable person would have believed he was under arrest whose trailer was "completely" surrounded by police with their weapons drawn and who was ordered through a bullhorn to leave the trailer and drop to his knees); *United States v. Saari*, 272 F.3d 804, 807, 811 (6th Cir. 2001) (finding a constructive in-home arrest where two officers positioned themselves in front of defendant's

### 3. Statement Following Arrest

Generally, evidence obtained following a violation of a defendant's constitutional rights will be suppressed as "fruit of the poisonous tree." *United States v. Williams*, 413 F.3d 347, 352 (3d Cir. 2005) (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). Such "fruits" include statements made in the wake of an unconstitutional, in-home arrest, unless the statements are sufficiently attenuated from the arrest. *New York v. Harris*, 495 U.S. 14, 16 (1990); *see United States v. Laville*, 480 F.3d 187, 196 (3d Cir. 2007) ("If [defendant's] arrest had been unreasonable under the Fourth Amendment, then the District Court may have been correct to suppress his custodial statement . . . as fruit of the poisonous tree.").

Here, after Bailey exited the house but before the agents placed him under arrest, and provided him with *Miranda* warnings, Bailey claimed ownership of the package that contained firearms. Bailey asked why the agents had come; they responded they came in connection with the package; and Bailey claimed ownership of the package. Bailey's statements—made incident to his unlawful constructive arrest—will be suppressed as "fruit of the poisonous tree." *See United States v. Charles*, 290 F. Supp. 2d 610, 618 (D.V.I. 1999) (suppressing statements made by defendant incident to unconstitutional, warrantless in-home arrest).

### B. Search of Defendant Bailey's Room, Backpack, and Container

Although the Court finds that Bailey's constructive in-home arrest violated the Fourth Amendment, a defendant's consent to a search will purge the taint of an unlawful arrest if consent is "obtained voluntarily under the circumstances." *See United States v. Narcisse*, 501 F.

---

apartment, knocked forcefully on defendant's door, commanded that he exit, and had their firearms pointed at defendant when he opened the door). Nonetheless, for the reasons stated above, the Court concludes that the circumstances presented here constitute a violation of the Fourth Amendment. *See Payton*, 445 U.S. at 589-90 ("[A]t the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.").

App'x 142, 145-46 (3d Cir. 2012). Because the Court finds that Bailey voluntarily consented to searches under circumstances sufficiently distinguishable from his arrest, the Court will not suppress evidence seized as a result of his consent.

### 1.     Applicable Legal Standards

Warrantless searches of the home are reasonable, and therefore do not offend the Fourth Amendment, if police obtain the consent of a person authorized to give it. *George v. Randolph*, 547 U.S. 103, 106 (2006); *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011). For consent to be effective, it must be voluntarily and freely given. *United States v. Price*, 558 F.3d 270, 278 (3d Cir. 2009). "Fundamental to the concept of voluntariness is that valid consent must not be coerced." *United States v. Hynson*, 451 F. App'x 91, 94 (3d Cir. 2011). There is "no talismanic definition of voluntariness, mechanically applicable to the host of situations where the question has arisen; instead, we determine the voluntariness of consent by examining the totality of the circumstances." *Price*, 558 F.3d at 278 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973)). The Government bears the burden of proving the voluntariness of the consent. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

The voluntariness of consent after an unlawful arrest is determined by weighing "the temporal proximity of the illegal detention and the consent, any intervening circumstances, and, particularly, the purpose [and] the flagrancy of the officer's unlawful conduct." *Narcisee*, 501 F. App'x at 146 (quoting *United States v. McSwain*, 29 F.3d 558, 562 (10th Cir. 1994) (internal quotation marks omitted)); *see Brown v. Illinois*, 422 U.S. 590, 603-04 (1975) (identifying factors). In addition, a court conducting a voluntariness analysis may consider the "age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter, the repetition or duration of the questioning;

9

and the use of physical punishment." *Stabile*, 633 F.3d at 231 (quoting *Price*, 558 F.3d at 278). Also relevant are the "setting in which the consent was obtained [and] the parties' verbal and non-verbal actions." *Price*, 558 F.3d at 278 (internal quotation marks omitted).

**2.  Analysis**

Despite the agents' initial assertion of authority when they encountered Bailey, and the fact that Bailey's grant of consent occurred fairly close in time to his arrest, the Court finds, under a totality of the circumstances, that the consent was both attenuated from the arrest and voluntary. Accordingly, the Court concludes that the consent form and the evidence obtained from the agents' search of Defendant Bailey's bedroom, backpack, and container should not be suppressed.

First, as to the agents' post-arrest conduct, there is no evidence of "signature signs of coercion," such as pointing of guns, or trying to "deceive or intimidate [Bailey] into signing the consent form." *See United States v. Thach*, 411 F. App'x 485, 489 (3d Cir. 2011). Further, Agent Adeen testified that the agents did not threaten to arrest Bailey's sister or anyone else in the house. Agent O'Quinn testified that no one raised their voices during the post-arrest encounter, that Bailey was calm and not agitated, and that Bailey's primary concern was about his mother seeing him in handcuffs. In sum, the evidence indicates that the agents' conduct was professional and lacked coercion. *See United States v. Mendoza*, 334 F. App'x 515, 518 (3d Cir. 2009) (upholding a finding of voluntary consent where, "although [defendant] had been detained for approximately an hour and fifteen minutes by the time" he gave consent, "officers treated [defendant] in a professional manner" and "there was no evidence of threats or other intimidating behavior"); *Unites States v. Schettler*, 32 F. App'x 14, 15 (3d Cir. 2002) (finding taint of illegal

seizure purged where defendant executed consent forms in a "relatively calm, relaxed atmosphere" inside his home, and government officials had put their weapons away).

Second, regarding the "flagrancy and purpose" of the agents' conduct, the Court concludes that this factor weighs in favor of finding the taint of his illegal arrest attenuated. The agents had proceeded to Bailey's house based on evidence that he was involved in the illegal mailing of a firearm. *Cf. McSwain*, 29 F.3d at 563-64 (finding flagrant behavior where officer detained and questioned defendant to "embark[] upon a fishing expedition in the hope that something might turn up"). Moreover, although the Court has determined that the agents' approach to Bailey which resulted in his exit from the house was coercive, the Court concludes that the agents' conduct was not flagrant. The agents had their guns drawn for safety reasons because of the nature of the conduct in which Bailey was allegedly engaged (firearms) and the determination by the agents that this was a "high risk situation." Further, although the guns were drawn, they were not pointed at Bailey, but were in a "low ready" position. As noted earlier, the circumstances here, while deemed by the Court to be sufficiently coercive to violate the Fourth Amendment, were significantly less coercive than situations presented in some other cases. *See supra*, note 8.

Perhaps most importantly, in terms of intervening circumstances, Bailey was advised of his *Miranda* rights before the agents asked for his consent to search. Further, Bailey signed a consent form that he read and apparently understood, after receiving *Miranda* warnings. *See Harris*, 548 F. App'x at 811. There is nothing in the record suggesting that Bailey was coerced into signing the consent form, or that his "ability to understand the consequences of consent was compromised by [his] background, education, or intelligence." *Thach*, 411 F. App'x at 489-90. To the contrary, it is evident that Bailey knew that he could withhold consent because when the

agents asked for his consent to search the entire house, Bailey consented only to the search of his bedroom. *See United States v. Molt*, 589 F.2d 1247, 1251 (3d Cir. 1978) (holding that defendant's knowledge that he has a right to refuse consent is one factor to be considered in assessing voluntariness). Finally, Bailey gave verbal consent to search the backpack and kitchen container under the same circumstances as his original consent to search his bedroom.[9]

Based on these facts, the Court finds that Bailey voluntarily signed the consent form and consented to the search of his bedroom, the backpack, and the container. The Court further concludes that the evidence at issue was "come at by . . . means sufficiently distinguishable to be purged of the primary taint" of the illegal arrest. *Wong*, 371 U.S. at 489. Accordingly, the Court will not suppress the consent-to-search form or the evidence obtained as a result of the searches.

### III. CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendant Bailey's Motion to Suppress (Dkt. No. 5; 14-cr-0046, Dkt. No. 28). An appropriate Order accompanies this Memorandum Opinion.

Date: January 23, 2015 

_____/s/_____
WILMA A. LEWIS
Chief Judge

---

[9] Agent Adeen testified that the black backpack and container of marijuana were in the kitchen in plain view to officers proceeding from the front door to Bailey's bedroom. The fact that Bailey had granted access, and provided directions, to his bedroom—together with Agent Adeen's testimony that a person had to walk past the kitchen to reach Bailey's bedroom from the front door—confirms that the agents did not offend the Fourth Amendment by making en route observations of the gun protruding from the backpack, and of the container which held marijuana. *United States v. Katz*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."). The agents then properly asked for Bailey to expand his consent to searches of these objects.